T.C. Memo. 2010-276

UNITED STATES TAX COURT

BENGT EDVARD OMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18413-08, 18421-08L.  Filed December 15, 2010.

Bengt Edvard Oman, pro se.

<u>Fred E. Green, Jr.</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  These cases were consolidated for purposes
of trial, briefing, and opinion.  On April 25, 2008, respondent
issued a notice of deficiency in which he determined a deficiency
of $5,024 in petitioner's Federal income tax for 2005 and
additions to tax of (1) $1,130 for failure to file a return

timely under section 6651(a)(1),[1] (2) $578 for failure to pay tax timely under section 6651(a)(2), and (3) $202 for failure to pay estimated tax under section 6654(a).  After concessions,[2] the issue for decision in docket No. 18413-08 is whether petitioner is liable for the income tax deficiency and additions to tax respondent determined for 2005.  In reaching our decision we must also decide whether respondent properly treated petitioner's 2005 Form 1040, U.S. Individual Income Tax Return, as unprocessable and invalid.

On June 24, 2008, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 2004 (notice of determination).  Pursuant to section 6330(d), petitioner seeks review of respondent's determination to proceed with the collection of petitioner's 2004 Federal income tax liability.  The issue for decision in docket No. 18421-08L is whether respondent abused his discretion in sustaining the collection action with respect to petitioner's 2004 Federal income tax liability.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Respondent concedes that petitioner's distribution from pensions was $1,480 rather than $14,800 as he had determined in the notice of deficiency.

## Background

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Nevada when he filed his petitions.

We find facts with respect to each year at issue as follows.

I.   2004

Petitioner and his wife, Johnette R. Oman (Mrs. Oman), timely filed their 2004 Form 1040A, U.S. Individual Income Tax Return. They claimed the filing status of "Married filing jointly". Petitioner and Mrs. Oman reported wages of $52,431, withholding of Federal income tax of $5,177, and an overpayment of Federal income tax of $413. Attached to the 2004 Form 1040A was a "Notice" in which petitioner and Mrs. Oman stated that they signed the 2004 return under duress.[3] Respondent issued a refund but later determined an $837 deficiency in petitioner and Mrs. Oman's 2004 Federal income tax. On October 10, 2006, respondent mailed petitioner and Mrs. Oman a notice of deficiency.

Petitioner and Mrs. Oman did not file a petition in response to the notice of deficiency. Instead, on October 19, 2006, they mailed respondent a letter demanding that respondent define income, explain his "Delegated Constitutional and Legislated Lawful authority", and identify Code sections imposing Federal

---

[3]Petitioner and Mrs. Oman attached a similar notice to their 2005 return. The notice accompanying their 2005 return is reproduced infra p. 10.

income tax on certain income.  On November 28, 2006, respondent replied by a letter informing petitioner and Mrs. Oman that he "will contact you again within 60 days to let you know what action we are taking.  You don't need to send us anything further or take any other action now on this matter."  On December 29, 2006, petitioner mailed respondent another letter that was similar to the October 19, 2006, letter.  On January 30, 2007, respondent replied again advising petitioner and Mrs. Oman that he would contact them within 60 days to inform them of the action taken.  Respondent's January 30, 2007, letter again stated that petitioner and Mrs. Oman did not need to do anything regarding the matter.[4]  On February 5 and March 12, 2007, respondent sent petitioner notices of balance due.

On October 22, 2007, respondent sent petitioner a Final Notice of Intent To Levy and Notice of Your Right to a Hearing (final notice) for 2004.[5]  On or about November 18, 2007, petitioner sent respondent a 22-page letter containing rhetoric similar to that used in the October 19, 2006, letter.  Petitioner asserted that respondent had repeatedly refused to provide him

---

[4]The parties subsequently exchanged similar correspondence. On Mar. 3, 2007, petitioner and Mrs. Oman sent respondent another letter similar to the Oct. 19, 2006, letter.  On May 16, 2007, respondent wrote that he would contact petitioner and Mrs. Oman within 60 days.

[5]Respondent sent a separate final notice for 2004 to Mrs. Oman.

with various information that petitioner had demanded, for example, the Code sections establishing respondent's "Delegated Constitutional and Legislated Lawful authority" to make assessments.

On November 19, 2007, petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. In response to the question on the Form 12153 about petitioner's daytime telephone number and the best time to call, petitioner wrote: "Please contact me in writing". Petitioner did not provide his phone number or the best time to call.

On March 26, 2008, Valerie Chavez (Ms. Chavez), a settlement officer assigned to petitioner's case, sent petitioner a letter acknowledging his Form 12153. Ms. Chavez stated that petitioner had requested to be contacted in writing and that she scheduled petitioner's hearing by correspondence for May 6, 2008. Ms. Chavez requested that by May 6, 2008, petitioner submit information that he would like considered in the hearing, such as a collection alternative and a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Ms. Chavez also stated that if petitioner wished to propose any alternative collection methods, he would need to complete a Form 433-A within 14 days and submit signed Forms 1040 for 2002, 2005, and 2006. Ms. Chavez informed petitioner that he

would not be able to dispute the underlying liability because he had received a notice of deficiency.

By letter dated April 4, 2008, petitioner replied to Ms. Chavez' March 26, 2008, letter. Petitioner stated that he did not recall requesting to be contacted in writing and asked Ms. Chavez to provide him a copy of his correspondence. He also requested a face-to-face hearing at the Internal Revenue Service (IRS) Appeals Office closest to Reno, Nevada, and stated that he would record such hearing. Petitioner stated that the Form 433-A did not pertain to him because he was neither a wage earner nor a taxpayer and "IRS has provided no information saying otherwise". However, he stated that he would complete and sign the Form 433-A if Ms. Chavez attested in writing that petitioner's signature would not validate or create the underlying liability or "grant any jurisdiction" over petitioner. Petitioner did not submit his Federal income tax returns for 2002, 2005, and 2006.

On April 11, 2008, Ms. Chavez acknowledged receipt of petitioner's April 4, 2008, letter. She enclosed a copy of petitioner's Form 12153 in which he requested to be contacted in writing. Ms. Chavez explained that generally the Appeals Office did not provide face-to-face conferences to taxpayers making only groundless or frivolous arguments. Ms. Chavez also stated that petitioner was not eligible for a face-to-face conference because

he had not filed his 2005 and 2006 returns[6] and, for that reason, could not submit a collection alternative, such as an installment agreement or offer-in-compromise. Ms. Chavez explained that because petitioner had previously had an opportunity to challenge his liability, he could not raise it in the section 6330 hearing. Ms. Chavez suggested that he might be able to do so through the audit reconsideration process.

On April 30, 2008, petitioner sent Ms. Chavez another letter, containing mostly statements similar to those in his previous correspondence. Petitioner also stated that the box on the Form 12153 that asked for his phone number and the best time to call did not indicate that it would be used to determine the hearing format. Petitioner again requested a face-to-face hearing. Petitioner enclosed with the letter copies of his 2005 and 2006 Forms 1040. The 2005 Form 1040 reported an IRA distribution of $1,419 and zero income on all other lines.[7] On the 2006 Form 1040 petitioner and Mrs. Oman reported zero income, but because of the standard deductions, exemptions, and Federal income tax withheld that they reported on the return, they claimed an overpayment of tax.

---

[6]Ms. Chavez stated: "It is not necessary to provide a copy of your 2002 tax return."

[7]It appears that petitioner did not include in his Apr. 30, 2008, letter to Ms. Chavez the notice that accompanied the originally filed 2005 return.

On June 24, 2008, respondent's Appeals Office issued a notice of determination sustaining the proposed levy. In the attached memorandum the Appeals Office stated that petitioner failed to provide requested financial information and delinquent tax returns, that the issues he raised were frivolous, and that petitioner did not propose a collection alternative. The Appeals Office also explained that petitioner was not able to raise the underlying liability at the hearing because he had received a notice of deficiency. The Appeals Office also stated that the 2005 and 2006 Forms 1040 were zero returns and that claiming a refund of any tax withheld by filing a zero return was frivolous. The Appeals Office concluded that the notice of levy was issued in accordance with all statutory and procedural requirements and appropriately balanced the need for efficient collection of taxes with petitioner's concern that the collection action be no more intrusive than necessary.

II. 2005

During 2005 petitioner worked for two companies as a machinist. He worked for and received wages from Dillen Products, Inc., which was a part of Myers Industries, Inc. From time to time during 2005 petitioner also worked for Paramount Custom Cycles, L.L.C. (Paramount). Petitioner also received unemployment compensation from the State of Nevada. At some point before 2005 petitioner worked for B&J Machine and Tool,

Inc., and participated in the company's section 401(k) employee stock ownership plan.  In 2005 petitioner received a distribution from the plan.

On April 14, 2006, petitioner and Mrs. Oman filed their Form 1040 for 2005.  They filled in their names, address, and Social Security numbers in the relevant boxes on the Form 1040.  They checked "Married filing jointly" as their filing status and claimed two exemptions.  Petitioner and Mrs. Oman reported a $1,419 IRA distribution on line 15b but wrote zeros in all other lines of the income portion of the Form 1040.  Because petitioner and Mrs. Oman claimed a $10,000 standard deduction and dependency exemption deductions of $6,400, they reported zero tax liability and sought a $6,055 refund.  Petitioner and Mrs. Oman signed the Form 1040 leaving no marks on the return or the jurat.[8]  They attached a Form 4852, Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, Etc., on which they reported zero wages from Paramount and Social Security and Medicare taxes withheld.  Petitioner explained on the Form 4852 that he had requested that Paramount correct its records but it "refuses to do so out of fear of IRS

---

[8]The jurat portion of the Form 1040 reads:  "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

retaliation." Petitioner and Mrs. Oman also attached another Form 4852 showing zero wages from Dillen Products, Inc., and Social Security and Medicare taxes withheld. Petitioner wrote that he had been unable to address the issue of incorrect statements out of fear of losing his job.

Transmitted with the Form 1040 was a cover letter (notice) that read as follows:

### NOTICE

Certified Mail # 7005 1820 0001 7990 3789

We the undersign [sic] do hereby affirm that the 1040 tax return for year 2005 included in this letter is not being filed and signed voluntarily. We are compelled to file and sign out of fear of unlawful retaliation from IRS and/or DOJ. The 1040 tax return for year 2005 was signed Under Duress.

Any 1040 tax returns from previous years that we have filed were not filed voluntarily and were signed Under Duress.

The reason for this notice to our 1040 tax return for year 2005 is the fact that IRS and/or DOJ use 1040 tax returns as evidence in tax and non-tax litigation, see attachment A.

The only way these return(s) can be used as evidence lawfully against the person(s) who filed and signed said return(s) is if the return(s) was filed voluntarily and sign [sic] voluntarily.

An American can not be compelled to be a witness against him/her self, see the Constitutions [sic] 5th amendment below.

The notice concluded with the recitation of the Fifth Amendment to the Constitution. Above the signature line the notice read: "With reservation of all our rights, immunities and privileges we

remain." Attachment A referenced and included with the notice was an excerpt from a 1998 article from United States Attorneys' Bulletin titled "Follow That Lead! Obtaining and Using Tax Information in a Non-Tax Case".

Respondent did not treat the 2005 Form 1040 as a valid and processable return. Using information return data from third-party payors, respondent prepared a substitute for return under section 6020(b). Respondent included in petitioner's income the following items: (1) Distributions from pensions of $1,480 (erroneously shown in the notice of deficiency as $14,800), (2) nonemployee compensation of $826, (3) unemployment compensation of $2,748, and (4) wages of $22,237.[9] Respondent also issued a notice of deficiency in which he determined that petitioner had income as set forth above and that petitioner was liable for an income tax deficiency of $5,024 and additions to tax under sections 6651(a)(1) and (2) and 6654.

Petitioner timely filed a petition to contest the notice of deficiency. Petitioner contends that he filed a valid 2005 return. Petitioner also argues that because his return is valid, respondent's notice of deficiency is invalid. Petitioner

---

[9]On the Form 1040 petitioner and Mrs. Oman claimed a filing status of "Married filing jointly". In preparing the substitute for return, respondent used a filing status of "single". The parties have not indicated whether they agree that petitioner may use the filing status "Married filing jointly" in Rule 155 computations.

enclosed with his petition a 26-page attachment citing numerous authorities, including cases and Code sections, out of context.

Discussion

I.   Deficiency Proceeding With Respect to 2005

   A.   Burden of Proof and Unreported Income Issues

Generally, the Commissioner's determination of a taxpayer's liability for an income tax deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The U.S. Court of Appeals for the Ninth Circuit, to which an appeal would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982).  If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden of production shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency was arbitrary or erroneous.  See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97.

Respondent introduced into evidence a Form W-2, Wage and Tax Statement, for 2005 showing that petitioner received wages from Myers Industries, Inc.  Respondent also introduced into evidence a certified print of the Information Returns Processing Transcript for 2005 showing, on the basis of third-party information returns, that petitioner received wages from Myers Industries, Inc., and Paramount; unemployment compensation; and a distribution from a section 401(k) plan.  Petitioner testified that in 2005 he worked for a company that was part of Myers Industries, Inc., and acknowledged that he possibly worked for Paramount.  He also testified that it was possible that he received unemployment compensation from the State of Nevada and a distribution from an employee stock ownership plan.  Because respondent connected petitioner with income-producing activities, the burden of production shifted to petitioner and the presumption of correctness attached to respondent's income adjustments.  See Weimerskirch v. Commissioner, supra at 361-362.

Petitioner does not argue that section 7491(a), which shifts the burden of proof to the Commissioner in certain circumstances, applies, nor does the record permit us to conclude that the requirements of section 7491(a)(2) are met.  Consequently, petitioner bears the burden of proof with respect to all adjustments.  See Rule 142(a).

Petitioner denies that he received wages from Paramount and Myers Industries, Inc. Petitioner contends that he attached the Forms 4852 to his 2005 return because the payors, Paramount and Dillen Products, Inc., erroneously withheld the Social Security and Medicare taxes. Petitioner presented no credible evidence to show that Paramount and Dillen Products, Inc., incorrectly reported wages they paid petitioner on the third-party information returns. To the contrary, petitioner testified that in 2005 he worked for Dillen Products, Inc., and it was "very possible" that he worked for Paramount. At trial petitioner recalled receiving the Forms W-2 but testified that he did not report the amounts because in his opinion they did not meet the definition of wages and instead he engaged in an exchange of property for property. This meritless argument is reminiscent of the equal exchange theory, which we have previously rejected as frivolous. See Beard v. Commissioner, 82 T.C. 766, 767, 773 (1984), affd. 793 F.2d 139 (6th Cir. 1986). Accordingly, we sustain respondent's determination with respect to petitioner's income.

B.   The Validity of the 2005 Form 1040

We now turn to the issue whether petitioner's 2005 Form 1040 was a valid return. We must first decide whether petitioner had an obligation to file a 2005 return, and then we must decide whether he did so.

### 1.    Obligation To File a Return

Under section 6012(a)(1)(A)(iv), an individual who is entitled to make a joint return and whose gross income, when combined with the gross income of his spouse, exceeds the sum of twice the exemption amount and the basic standard deduction applicable to a joint return, must file a Federal income tax return.  As discussed above, we sustain respondent's determination regarding petitioner's income for 2005 as modified by respondent's concession.  Petitioner's income for 2005 exceeded the described threshold, and consequently, petitioner had an obligation to file a return for 2005.

Petitioner contends that he had no obligation to file a return because respondent's records show no such obligation. Petitioner relies on respondent's letter dated July 2, 2008. Respondent's July 2, 2008, letter is a response to petitioner's request for release of records under the Freedom of Information Act.  Petitioner contends that the records produced in response to his request show code "01" as petitioner's filing requirement code, which petitioner asserts means "Return not required to be mailed or filed".  We reject petitioner's argument.  It is the Internal Revenue Code that establishes a taxpayer's filing requirement.  See sec. 6012.  Moreover, petitioner has failed to show that the Individual Master File records on which he relies

are related to his 2005 taxable year.[10]  Accordingly, we conclude
petitioner has failed to prove that he was not required to file a
return for 2005.

        2.    Validity of a Return in General

    Generally, pursuant to section 6011(a) taxpayers must file
returns that conform to the forms and regulations prescribed by
the Secretary.  See sec. 1.6011-1(a), Income Tax Regs.  The Form
1040 is the form prescribed by the Secretary for use by
individual taxpayers in filing returns.  Williams v.
Commissioner, 114 T.C. 136, 139 (2000).  Section 6065 requires a
return to be verified by a written declaration that it is made
under the penalties of perjury.  See id.  The preprinted jurat on
the Form 1040 satisfies the verification requirement of section
6065.  See id.

    The Code does not define the word "return".  See Mendes v.
Commissioner, 121 T.C. 308, 329 (2003) (Vasquez, J., concurring);
Swanson v. Commissioner, 121 T.C. 111, 122-123 (2003).  On the
basis of the Supreme Court's opinions in Zellerbach Paper Co. v.
Helvering, 293 U.S. 172, 180 (1934), and Florsheim Bros. Drygoods
Co. v. United States, 280 U.S. 453, 464 (1930), in Beard v.
Commissioner, supra at 777, we applied a four-part test (Beard

_____

    [10]Petitioner contends the "01" code means that the taxpayer
has no filing obligation.  However, one printout in Exhibit 37-P
appears to refer to Mrs. Oman's 2005 year, and the other printout
appears to relate to petitioner's 2003 taxable year.

test) for determining whether a taxpayer's document constitutes a valid return.  To be a valid return, we said the document must meet the following requirements:

> First, there must be sufficient data to calculate [the] tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury. [Id.]

We have applied the Beard test in various contexts, including for purposes of sections 6651(a)(1), 6662(a), and 6011, among others. Mendes v. Commissioner, supra at 329-330 (Vasquez, J., concurring).

Applying the Beard test, this Court has generally held that a Form 1040 with zeros on every income line is devoid of financial data and is not a valid return.  See, e.g., Turner v. Commissioner, T.C. Memo. 2004-251; Halcott v. Commissioner, T.C. Memo. 2004-214.  We also applied the Beard test when the taxpayer reported income on one line of the Form 1040 but wrote zeros on all other lines of income under circumstances that indicated no intent to file a valid return.  See, e.g., Watson v. Commissioner, T.C. Memo. 2007-146 (concluding that a return that reported income on one line and zeros on other lines and that was accompanied by an attachment negating the jurat was invalid as it did not constitute a reasonable attempt to comply with the requirements of the tax law), affd. 277 Fed. Appx. 450 (5th Cir. 2008).  The Beard test has been adopted and used by several U.S.

Courts of Appeals, often in the context of a bankruptcy case appeal, to decide whether a particular document is a return filed by a taxpayer.  See, e.g., <u>Colsen v. United States</u>, 446 F.3d 836 (8th Cir. 2006) (whether purported returns filed by a debtor-taxpayer after the IRS had prepared substitutes for returns and assessed tax liabilities were returns within the meaning of 11 U.S.C. sec. 523(a)(1)(B)(i)); <u>Moroney v. United States</u>, 352 F.3d 902 (4th Cir. 2003); <u>United States v. Hindenlang</u>, 164 F.3d 1029 (6th Cir. 1999) (whether a substitute for return was a return for purposes of 11 U.S.C. sec. 523(a)(1)(B)(i)); <u>Bergstrom v. United States</u>, 949 F.2d 341 (10th Cir. 1991) (same).

Under <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we follow any decisions of the Court of Appeals to which appeal lies that are squarely on point. In <u>United States v. Long</u>, 618 F.2d 74, 75-76 (9th Cir. 1980),[11] the Court of Appeals for the Ninth Circuit held that in the context of a criminal prosecution under section 7203,[12] a

---

[11]The position of the Court of Appeals for the Ninth Circuit that a return containing all zeros constitutes a valid return for purposes of a sec. 7203 prosecution is contrary to the positions of several other Courts of Appeals that have considered the issue.  See <u>United States v. Mosel</u>, 738 F.2d 157 (6th Cir. 1984) (zero income return); <u>United States v. Rickman</u>, 638 F.2d 182 (10th Cir. 1980) (zero income return); <u>United States v. Smith</u>, 618 F.2d 280 (5th Cir. 1980) (zero on every line of the return).

[12]Sec. 7203 establishes criminal liability for willful failure to file returns.

Form 1040 that contained only zeros in every space for entering exemptions, income, tax, and tax withheld was a valid return.

In Long, the Court of Appeals reversed the taxpayer's conviction for willful failure to file a return on a record that showed the following: (1) The Government had no record of the taxpayer's having filed any returns for the years at issue; (2) during the years at issue the IRS did not keep copies of documents that it considered to be invalid returns, including forms showing only zeros, nor did the IRS keep records of receiving such documents; (3) the taxpayer, defending against the prosecution's position of no return, introduced facsimile copies of the documents he purportedly filed as returns; (4) the trial court, sitting as the trier of fact in a nonjury trial, accepted as a fact that the taxpayer had filed the documents; and (5) the taxpayer "had inserted zeros in the spaces reserved for entering exemptions, income, tax, and tax withheld" on the Forms 1040 he had filed and had attached to the Forms 1040 copies of "a tax protest tract". See id. at 75. The Court of Appeals started with the trial court's factual finding that the taxpayer "filed tax forms resembling the facsimiles introduced at trial", which the court concluded was not clearly erroneous, and then turned to the issue of whether, by filing the Forms 1040, the taxpayer "made a return" for purposes of section 7203. See id. It decided the issue by applying the principle articulated in United

States v. Porth, 426 F.2d 519, 523 (10th Cir. 1970), and adopted by the Court of Appeals for the Ninth Circuit in United States v. Klee, 494 F.2d 394, 397 (9th Cir. 1974)--a tax form that does not contain any information relating to the taxpayer's income from which the tax may be computed is not a valid return under section 7203.  See United States v. Long, supra at 75.  The Court of Appeals held that the prosecution did not prove that the taxpayer was guilty of willfully failing to file a return within the meaning of section 7203, and it explained its reasoning[13] as follows:

> The zeros entered on Long's tax forms constitute "information relating to the taxpayer's income from which the tax can be computed."  The I.R.S. could calculate assessments from Long's strings of zeros, just as it could if Long had entered other numbers. The resulting assessments might not reflect Long's actual tax liability, but some computation was possible.  In this respect, the circumstances here differ from those in Porth and similar cases in which defendants failed to complete tax forms or left them

_____

[13]In a footnote, the court distinguished cases in which a court has held that a purported return stating only a name, address, occupation, and signature and asserting that the tax law is unconstitutional, e.g., United States v. Daly, 481 F.2d 28 (8th Cir. 1973), or stating a name, address, an entry claiming a refund, and a constitutional objection, e.g., United States v. Irwin, 561 F.2d 198, 201 (10th Cir. 1977), was not a tax return under the Code.  See United States v. Long, 618 F.2d 74, 76 n.3 (9th Cir. 1980).  In another footnote, the Court acknowledged that applying the principle from United States v. Porth, 426 F.2d 519, 523 (10th Cir. 1970), may "leave open the possibility that certain papers, although conveying information, might nevertheless not constitute tax returns."  United States v. Long, supra at 76 n.4.

blank.  Nothing can be calculated from a blank, but a
zero, like other figures, has significance.  A return
containing false or misleading figures is still a
return.  False figures convey false information, but
they convey information.  [Id. at 75-76; fn. refs.
omitted.]

In Conforte v. Commissioner, 692 F.2d 587 (9th Cir. 1982),

affg. in part, revg. in part and remanding 74 T.C. 1160 (1980),

the Court of Appeals for the Ninth Circuit again addressed what

constitutes a "return", but this time the issue arose under

section 6211, which defines a deficiency, former section 6653(b),

which imposed a 50-percent fraud penalty on any part of an

underpayment due to fraud, and former section 6653(c), which

defined "underpayment" to mean "deficiency" as defined in section

6211.  One of the taxpayers argued that she was entitled to a

reduction in the fraud penalties determined by the Commissioner

for amounts that she and her husband had reported on filed Forms

1040.  See id. at 590.  The Forms 1040 reflected only the

taxpayers' names, addresses, Social Security numbers, filing

status, exemptions, amounts designated as taxable income, and

computations of income and self-employment tax.  Id. at 588.  The

taxpayers did not include specific amounts or descriptions for

gross income or deductions on the Forms 1040.  Id. at 588-589.

Instead they attached to each form a statement that they were

under investigation by the Government and that they were

asserting their Fifth Amendment privilege against self-

incrimination with respect to the details of their income and expenses. See id. at 589.

Before this Court, the taxpayer in Conforte had argued that the tax shown on the Forms 1040 qualified as an "'amount shown as the tax by the taxpayer upon his return'" within the meaning of section 6211(a)(1)(A). Id. at 590 (quoting section 6211(a)(1)(A)). Alternatively she had argued that the amount of tax shown on her Forms 1040 represented an amount previously assessed or collected without assessment within the meaning of section 6211(a)(1)(B). Conforte v. Commissioner, supra at 590-591. Relying on Sanders v. Commissioner, 21 T.C. 1012, 1018 (1954), affd. 225 F.2d 629 (10th Cir. 1955), this Court rejected both arguments, concluding that none of the Forms 1040 qualified as returns because the documents did not state specifically the amounts of gross income or the deductions and credits taken into account in computing taxable income. See Conforte v. Commissioner, supra at 591. The Commissioner, relying on United States v. Long, 618 F.2d 74 (9th Cir. 1980), argued that for a Form 1040 to be recognized as a return for tax purposes, it must set forth sufficient information relating to the taxpayer's income from which the tax can be computed. See Conforte v. Commissioner, supra at 591.

The Court of Appeals in Conforte distinguished Long because Long decided whether the taxpayer had made a return for purposes

of section 7203. See id. It rejected the idea that the term "return" has the same meaning under all sections of the Code, acknowledging instead "the possibility that the same word could have a different meaning in different parts of the code." Id. It concluded that "where, as here, a word could well have a different meaning in different statutory contexts, a purpose-oriented approach should be used when interpreting the meaning of the word as it is used in different sections of the Code." Id. Applying the described approach, the Court of Appeals held that the Forms 1040 were returns for purposes of the calculations required by section 6211 and former section 6653(b) and (c). See id. at 592.

The approach of the Court of Appeals for the Ninth Circuit regarding what constitutes a "return", as reflected in United States v. Long, supra, and clarified in Conforte v. Commissioner, supra, requires us to examine the purpose behind the relevant Code section under which the issue arises. In this case, the issue arises under section 6651(a)(1), which authorizes an addition to tax when a taxpayer fails to file a timely return. We can discern from a simple reading of section 6651(a)(1) that Congress clearly intended to impose the addition to tax whenever a taxpayer fails to satisfy the taxpayer's obligation to file a proper return by its due date. We can also discern that a provision like section 6651(a)(1) was designed to facilitate the

orderly administration of Federal tax law by the Commissioner.  A Form 1040 on which a taxpayer fails to make an honest and reasonable attempt to comply with the tax law, such as the claiming of withholding without any reported wages or taxable distributions, is not a document that is worthy of being processed as a return, and the IRS routinely takes the position that such a Form 1040 is not a return for purposes of section 6651(a)(1).  It is this scenario that respondent contends is presented here.  In a case like this one, we apply the Beard test in deciding whether a document qualifies as a return for purposes of section 6651(a)(1).  See, e.g., Cabirac v. Commissioner, 120 T.C. 163, 168-170 (2003); Janpol v. Commissioner, 102 T.C. 499, 503, 505 (1994).

We note that the Court of Appeals has applied the Beard test under different circumstances to decide whether a document qualified as a return and has described the Beard test as providing "a sound approach under both the Bankruptcy Code and the [Code]." United States v. Hatton, 220 F.3d 1057, 1060-1061 (9th Cir. 2000).  Consequently, we conclude that the Beard test is not inconsistent with the purpose-oriented approach of Conforte, and we shall apply it here.[14]

---

[14]In Coulton v. Commissioner, T.C. Memo. 2005-199, a deficiency case in which the taxpayer filed a return containing zeros on each line regarding income and tax, we distinguished United States v. Long, 618 F.2d 74 (9th Cir. 1980), on the ground

(continued...)

### 3. The Application of the Beard Test

Respondent contends that the Form 1040 fails the first and third parts of the <u>Beard</u> test because it does not contain sufficient information to calculate tax liability and it is not an honest and reasonable attempt to satisfy the requirements of the tax law. We agree and explain our reasoning below.

Part one of the <u>Beard</u> test considers whether the purported return contains sufficient data to calculate the tax liability. See <u>Beard v. Commissioner</u>, 82 T.C. at 777. Although an incorrect return is not necessarily an invalid return, see <u>Zellerbach Paper Co. v. Helvering</u>, 293 U.S. at 180 ("Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such * * *, and evinces an honest and genuine endeavor to satisfy the law."), we have held that returns containing zero entries on every line regarding income are devoid of financial data and therefore are

---

[14](...continued)
that it involved a criminal statute, sec. 7203. We concluded that <u>Long</u> was not squarely on point, and we applied the <u>Beard</u> test to decide whether the taxpayer's purported return was a valid return. See <u>Coulton v. Commissioner</u>, <u>supra</u>; see also <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). As in <u>Coulton</u>, we are not faced with a prosecution under sec. 7203. Instead we are considering the validity of a purported return in the context of a civil tax deficiency proceeding in which one of the issues is whether petitioner is liable for the sec. 6651(a)(1) addition to tax for failing to file a timely return.

invalid, see, e.g., <u>Turner v. Commissioner</u>, T.C. Memo. 2004-251; <u>Halcott v. Commissioner</u>, T.C. Memo. 2004-214.

At first glance, it appears that petitioner's purported return is not a zero income return because petitioner reported a $1,419 IRA distribution.  In addition, petitioner and Mrs. Oman claimed joint return filing status, dependency exemption deductions, and the standard deduction, and they inserted their Social Security numbers.  Nevertheless, petitioner's return on its face lacks information sufficient to apprise respondent of his and Mrs. Oman's Federal income tax liability because it shows $6,055 tax withheld but contains no information as to income from which such tax was purportedly withheld.  Specifically, the return shows zeros for wages, pension distributions, or dividends from which the $6,055 tax could have been withheld and reports no Federal income tax liability despite the one income entry.  Accordingly, we conclude petitioner's 2005 Form 1040, on its face, does not contain sufficient data to calculate petitioner's tax liability and fails part one of the <u>Beard</u> test.

Part three of the <u>Beard</u> test considers whether the taxpayer made an honest and reasonable attempt to satisfy the requirements of the tax law.  See <u>Beard v. Commissioner</u>, <u>supra</u> at 777. Respondent contends that the Form 1040 fails part three of the <u>Beard</u> test because of the "assertion of the Fifth Amendment as protecting him from having the government use the forms he

submitted as evidence against him".  For reasons set forth below, we do not limit our analysis to petitioner's asserted Fifth Amendment position.

This Court and the Court of Appeals for the Ninth Circuit have examined the taxpayer's intent and the facts and circumstances surrounding the filing of the document purporting to be the taxpayer's return in deciding whether a taxpayer has satisfied part three of the Beard test.  See United States v. Hatton, supra at 1060-1061 (considering as part of the third part of the Beard test the fact that the taxpayer filed the return only after the Commissioner contacted him); Dunham v. Commissioner, T.C. Memo. 1998-52 (considering the taxpayer's background and intent under the third part of the Beard test). In applying part three of the Beard test, we consider that petitioner received wages during 2005, he failed to report those wages, and he claimed he had no obligation to report his earned income on a return.[15]  As discussed above, we have previously rejected similar arguments as frivolous.  See Beard v. Commissioner, supra at 767, 773; see also Rowlee v. Commissioner, 80 T.C. 1111, 1120-1121 (1983).

Our conclusion regarding petitioner's intent with respect to his purported 2005 return is also supported by petitioner's

---

[15]At trial petitioner argued the amounts he received in exchange for services did not meet the definition of "wages" because he received property in exchange for property.

behavior after he filed the purported return.  On July 31, 2006, less than 4 months after filing the 2005 return, petitioner mailed to respondent a letter requesting an explanation of respondent's authority to issue notices and to make assessments and legal determinations against petitioner and giving respondent 30 days to reply.[16]  Petitioner also asked respondent what Code section requires him to enclose documentation to support the entries on the return and what Code section defines income. Petitioner then instructed respondent to mail the answer to his address in "Nevada Republic [no ZIP Code]".  The letter concluded:  "If [the response] is addressed any other way than exactly as above I will know that the letter is intended for a fiction and you are trying to trick Me into abandoning my common law jurisdiction to enter your commercial, admirality [sic], color of law jurisdiction."

The rhetoric of petitioner's July 31, 2006, letter, which was nearly contemporaneous with the time of filing the 2005 return, raises serious doubts that the notice, while not a blanket Fifth Amendment claim, was drafted and attached to the 2005 return in good faith.  The July 31, 2006, letter is one of 11 similar letters in the record that petitioner mailed to respondent from July 31, 2006, through October 12, 2008.  We find that the notice and the purported return to which it was attached

---

[16]Petitioner continues this line of argument on brief.

were part of a pattern of communications of meritless content that petitioner mailed to respondent evincing an intent on petitioner's part not to comply with his tax obligations. We further find that petitioner's purported 2005 return was not an honest and reasonable attempt to satisfy the requirements of the tax law, and we conclude that it fails part three of the Beard test. Because petitioner's purported 2005 return fails the first and third parts of the Beard test, we conclude it was not a valid return, and we sustain respondent's determination to disregard it.

### C. Additions to Tax

#### 1. Burden of Production

Section 7491(c) provides that the Commissioner bears the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount. The Commissioner's burden of production under section 7491(c) is to produce evidence that imposing the relevant penalty or addition to tax is appropriate. Swain v. Commissioner, 118 T.C. 358, 363 (2002). The taxpayer bears the burden of introducing evidence regarding reasonable cause or a similar defense. Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

2.   Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a return timely in the amount of 5 percent of the tax required to be shown on the return for each month during which such failure continues, not to exceed 25 percent in the aggregate, unless it is shown that such failure is due to reasonable cause and not due to willful neglect.

Respondent satisfied his burden of production under section 7491(c) by introducing an excerpt from petitioner's transcript that contained third-party information returns data relating to petitioner's income and a copy of the 2005 return that respondent determined was unprocessable.  Accordingly, petitioner was required to introduce evidence to prove that his failure to file a valid return was due to reasonable cause and not due to willful neglect.  See sec. 6651(a)(1); Rule 142(a).  Petitioner did not argue that his failure to file a valid return was due to reasonable cause, and he presented no credible evidence on the issue.  Accordingly, we hold that petitioner is liable for the addition to tax under section 6651(a)(1).

3.   Section 6651(a)(2)

Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount of tax shown on a return.  The section 6651(a)(2) addition to tax applies only when an amount of tax is shown on a return.  Cabirac v. Commissioner, 120 T.C. at 170.

Petitioner did not file a valid 2005 return.  However, respondent prepared a substitute for return under section 6020(b) for 2005. A return made by the Secretary under section 6020(b) is treated as the return filed by the taxpayer for purposes of determining whether the section 6651(a)(2) addition to tax applies.  Sec. 6651(g)(2); Wheeler v. Commissioner, 127 T.C. 200, 208-209 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).

Where the taxpayer did not file a valid return, to satisfy his burden of production for the section 6651(a)(2) addition to tax the Commissioner must introduce evidence that he prepared a substitute for return satisfying the requirements under section 6020(b).  Wheeler v. Commissioner, supra at 209.  Respondent satisfied this burden by introducing into evidence an IRC Section 6020(b) Certification.  Consequently, petitioner had the burden of introducing evidence to show that his failure to pay was due to reasonable cause.  He did not do so.  Petitioner did not advance any argument regarding the section 6651(a)(2) addition to tax and introduced no credible evidence to show reasonable cause for his failure to pay tax shown on the return.  Accordingly, we sustain respondent's determination with respect to the addition to tax under section 6651(a)(2).

4.  Section 6654

Section 6654 imposes an addition to tax for underpayment of a required installment of estimated tax.  Each required

installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (1) 90 percent of the tax shown on the taxpayer's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the taxpayer filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(A) and (B).

Respondent introduced evidence that petitioner was required to file a Federal income tax return for 2005 and that the return he filed was invalid.  Despite petitioner's claim on the 2005 return that tax of $6,055 was withheld, respondent's records show no such withholding.  Petitioner made no other payments for 2005.  Respondent also introduced into evidence petitioner's return for 2004 showing a $4,764 tax liability.  This satisfies respondent's burden of production under section 7491(c) by showing that petitioner had a required annual payment of estimated tax for 2005.  We also find that petitioner does not qualify for any of the exceptions of section 6654(e).  Petitioner presented no argument with respect to section 6654.  Therefore, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6654(a).

II.  Collection Proceeding Regarding Petitioner's 2004 Tax Liability

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary

has notified such person in writing of the right to a hearing before the levy is made. If the person requests a hearing, a hearing shall be held before an impartial officer or employee of the IRS Appeals Office. Sec. 6330(b)(1), (3). At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a notice of deficiency for the tax liability or did not otherwise have an earlier opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must determine whether the proposed levy may proceed. The Appeals Office is required to take into consideration: (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed levy action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with

the section 6330 hearing.  Where the validity of the underlying liability is properly at issue, the Court reviews the matter on a de novo basis.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not in dispute, the Court reviews the Appeals Office's determination for abuse of discretion.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law."  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner contends that respondent misled him by instructing him not to take further action when he contacted respondent after receiving the notice of deficiency for 2005. However, petitioner stipulated the notice of deficiency and does not deny that he received it.  The notice of deficiency states: "The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and the Court cannot consider your case if the petition is filed late." Petitioner testified that he read the notice of deficiency upon receipt and remembered the language regarding the time for filing a petition.  Petitioner may not now hide behind respondent's form letters because the notice of deficiency contained clear instructions on what petitioner had to do to contest the 2004 liability.  Because petitioner failed to dispute the underlying

liability by filing a timely petition, section 6330(c)(2)(B) precludes him from contesting the validity of the underlying tax liability during the section 6330 hearing and in this proceeding. Accordingly, we review respondent's determination for abuse of discretion.

In his petition petitioner does not raise any meritorious arguments. During trial petitioner contended that although he requested a face-to-face hearing, he did not receive any hearing. Petitioner contends that respondent improperly interpreted the phrase "Please contact me in writing" on the Form 12153 as petitioner's request for a hearing by correspondence.

Petitioner's claimed misunderstanding of the Form 12153 is understandable. Line 3 of the Form 12153 asks for a taxpayer's phone number and the best time to call. It does not indicate that it is intended to be the means by which a taxpayer selects a hearing format, nor does it indicate that by providing a phone number the taxpayer is requesting a telephone hearing or that, in petitioner's case, by requesting a contact in writing, he selects a hearing by correspondence. The Form 12153 in fact has no box to check or area to write in to indicate the preferred format of a requested hearing. Nevertheless, even if petitioner unknowingly requested a hearing by correspondence and later clarified he wanted a face-to-face hearing, we conclude that respondent did not abuse his discretion in denying petitioner a

face-to-face hearing and that petitioner received a proper section 6330 hearing.

Generally, because a hearing under section 6330 is an informal proceeding, a face-to-face hearing is not mandatory. See Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41 (2000); Clough v. Commissioner, T.C. Memo. 2007-106. While a section 6330 hearing may be held face-to-face, a proper hearing may be conducted by telephone or correspondence in certain circumstances. Katz v. Commissioner, supra at 337-338; see also Clough v. Commissioner, supra. A hearing by correspondence consists of one or more written or oral communications between an Appeals officer or employee and the taxpayer. Sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. All communications between the taxpayer and the Appeals officer from the time of the hearing request up to the time of the issuance of the notice of determination constitute part of the section 6330 hearing. See Turner v. Commissioner, T.C. Memo. 2010-44; Middleton v. Commissioner, T.C. Memo. 2007-120.

The record establishes that petitioner submitted his Form 12153 on November 19, 2007. Petitioner did not request a face-to-face hearing on his Form 12153 but did so by letter dated April 4, 2008. In the April 4, 2008, letter petitioner stated that respondent had repeatedly refused to answer his questions regarding Code sections that define income and property received

as income and establish respondent's "Delegated Constitutional and Legislated Lawful authority".  The letter contained meaningless language, for example:  "I do hereby give you **notice** that you, and all you are, are **Fired** from any and all representation of my private affairs **without recourse**".  Other than stating that his inability to discuss the underlying liability at the hearing is unfair, petitioner did not describe in his request for a face-to-face hearing what he intended to discuss at the hearing, nor did he offer collection alternatives. Ms. Chavez informed petitioner by letter dated April 11, 2008, that his request for a face-to-face hearing was denied.

On April 30, 2008, petitioner sent another letter to Ms. Chavez that was similar to the April 4, 2008, letter.  Petitioner pointed out that the Form 12153 was confusing because it did not state that by selecting the method of contact, he was actually selecting the format of the section 6330 hearing.  Petitioner included the 2005 and 2006 Forms 1040.  As discussed above, the 2005 Form 1040 was an invalid return and the 2006 Form 1040 was a zero income return.  Again, petitioner did not identify any issues he would discuss at the hearing, nor did he propose collection alternatives or submit a completed Form 433-A, as Ms. Chavez had requested.  We conclude that respondent did not err in refusing to grant petitioner a face-to-face hearing and that the

correspondence between petitioner and Ms. Chavez constituted a proper section 6330 hearing.

In his petition and at trial petitioner did not pursue any meritorious argument, nor did he introduce any credible evidence that would allow us to conclude that the determination to sustain the levy was arbitrary, capricious, without foundation in fact or law, or otherwise an abuse of discretion. See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 112, 115-116 (2007). The Appeals Office verified that all requirements of applicable law or administrative procedure were met. It balanced the need for efficient collection of taxes with petitioner's concerns that the collection action be no more intrusive than necessary. Accordingly, we conclude that respondent did not abuse his discretion in sustaining the collection action.

We have considered all of the arguments raised by either party, and to the extent not discussed above, we find them to be irrelevant or without merit.[17]

---

[17]Sec. 6673(a)(1) provides that this Court may require the taxpayer to pay a penalty not in excess of $25,000 whenever it appears to this Court that: (a) The proceedings were instituted or maintained by the taxpayer primarily for delay, (b) the taxpayer's position is frivolous or groundless, or (c) the taxpayer unreasonably failed to pursue available administrative remedies. Respondent did not request that we impose a penalty pursuant to sec. 6673, and in the exercise of our discretion we will not impose a sec. 6673 penalty on petitioner. However, we warn petitioner that if in the future he maintains groundless positions in this Court, he runs the risk that he will be sanctioned in accordance with sec. 6673(a)(1).

To reflect the foregoing,

<u>Decision will be entered under Rule 155 in docket No. 18413-08</u>.

<u>Decision will be entered for respondent in docket No. 18421-08L</u>.