T.C. Memo. 2021-116

UNITED STATES TAX COURT

SUZANNE JEAN MCCRORY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11798-18W, 12956-18W.           Filed October 4, 2021.

Suzanne Jean McCrory, pro se.

Alex Shlivko and Rachel L. Schiffman, for respondent.

MEMORANDUM OPINION

JONES, Judge:  In these whistleblower cases,[1] petitioner seeks review

pursuant to section 7623(b)(4) of the determinations by the Whistleblower Office

_____

[1]By order dated March 18, 2019, we consolidated docket nos. 11798-18W
and 12956-18W for purposes of trial, briefing, and opinion.

**[\*2]** (WBO) of the Internal Revenue Service (IRS) to reject 19 claims for awards.[2] Relying on a stipulated record, the parties submitted the cases for decision without trial under Rule 122. As explained below, we will sustain the WBO's determinations because the WBO's rejections of petitioner's claims were supported by the administrative record and were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Accordingly, we rule for respondent.

Background

## I. Two Sets of Whistleblower Claims

Petitioner submitted six Forms 211, Application for Award for Original Information, dated April 5, 2018 (first set of WB claims). Petitioner alleged in her first set of WB claims that certain individuals (target taxpayers) may not have reported taxable income from settlements or jury awards. Respondent received these forms on or around April 13, 2018, and assigned a claim number to each of them.[3]

---

[2]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[3]The corresponding claim numbers were: 2018-7663, 2018-7664, 2018-7665, 2018-7668, 2018-7671, and 2018-7674.

**[\*3]**  Petitioner then submitted thirteen additional Forms 211 most of which were dated April 22, 2018 (second set of WB claims).  On these forms petitioner made the same allegations that she had made in the first set of WB claims but with respect to different target taxpayers.  Respondent received the second set of WB claims on or around May 4, 2018, and assigned a claim number to each of them.[4]

Each set of claims was accompanied by a cover letter in which petitioner disclosed that her allegations were based on a "hypothesis" and supported by publicly available information.  For each claim she attached certain publicly available information.[5]

---

[4]The corresponding claim numbers were:  2018-8507, 2018-8508, 2018-8510, 2018-8511, 2018-8512, 2018-8513, 2018-8514, 2018-8517, 2018-8518, 2018-8519, 2018-8520, 2018-8521, and 2018-8522.

[5]Petitioner alleged in some of the claims that the target taxpayer owed more than $2 million.  The corresponding Award Recommendation Memorandum (ARM) for each of these claims noted that they might meet the requirements for a sec. 7623(b) claim.

**[*4]** II.     WBO's Processing of the Claims

The WBO processed each set of claims.  An employee in the WBO's classification section (classifier) performed an initial evaluation of, and drafted an ARM for, each claim.[6]

A.     ARM Format and Completion

1.     Classification Research

Each ARM contains a section captioned "Classification Research", which lists command codes used for extracting information from various IRS databases and research programs.[7]  In addition to the command codes, the Classification Research section lists the names of three computerized systems which require IRS access and the electronic portal that allows employees to access certain IRS

---

[6]On the basis of the stipulated record, we can surmise that the individuals named on the ARMs in the sections labeled "Classification Section" and "Prepared by" were performing the functions of "classifiers".  See Internal Revenue Manual (IRM) pts. 25.2.1.3.1(1) (Jan. 11, 2018) ("The classifier will determine whether the information should be forwarded for further review.").

[7]Command codes are programmed for use in the IRS Integrated Data Retrieval System (IDRS), an electronic interface between the IRS' employees and its various computer systems.  See Plotkin v. Commissioner, T.C. Memo. 2019-27, at *13 n.3; IRM pt. 2.3.2.1 (Mar. 16, 2010).  An IRS employee can obtain a transcript by entering various command codes into IDRS.  Plotkin v. Commissioner, at *13 n.3 (citing May v. Commissioner, T.C. Memo. 2014-194, at *12 n.6, aff'd sub nom. Best v. Commissioner, 702 F. App'x 615 (9th Cir. 2017)).

[*5] resources.[8]  The codes, system names, and the portal name are listed individually with a box next to each.  Also in the Classification Research section is a box labeled "Internet".  See Internal Revenue Manual pt. 25.2.1.3.2(4) (Jan. 11, 2018).  The ARM instructs the classifier to "Check applicable boxes that you researched."

In each of the 19 ARMs, the classifier checked the boxes next to certain command codes, indicating that the classifier used those codes to retrieve information from IRS databases and systems.  With respect to the first set of WB claims and six of the second set of WB claims, the classifier checked the boxes next to the following seven command codes:

- INOLES:  returns name lines (current and prior), street addresses, tax year, Social Security information, and other information specific to the type of account requested;[9]

---

[8]The three computerized systems are the Web-based Currency and Banking Retrieval System, Accurint, and YK1.  The electronic portal is called the Employee User Portal (EUP).  For a description of the Web-based Currency and Banking Retrieval System, see IRM pt. 4.26.4.1 (Jan. 6, 2016).  For descriptions of Accurint and YK1, see IRM pt. 4.24.18.14.3.5 (Apr. 9, 2014).  For a description of the EUP, see IRM pt. 3.21.263.9.1.2 (Dec. 8, 2017).

[9]IRM pt. 2.3.47.3(2) (Jan. 1, 2018).

- IRPTRL: requests either online or hard copy Information Returns Processing (IRP) transcripts showing data submitted by employers and other third parties, such as Form 1042-S, Foreign Person's U.S. Source Income Subject to Withholding, Form W-2, Wage and Tax Statement, Form W-2G, Certain Gambling Winnings, Form 1099-MISC, Miscellaneous Income, and Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Such data reports taxpayer income during the year from the Information Returns Master File;[10]

- TRDBV: displays data from the Tax Return Database through which summary selection screens display the returns, schedules, and forms submitted by a specific filer;[11]

- IMFOLI: returns a preview of an individual taxpayer's compliance history for identifying any filed or unfiled returns;[12]

---

[10]See IRM pt. 2.3.35.1(1) (Jan. 11, 2018), 2.3.35.9.5 (Dec. 4, 2014). The IRS IRP system receives data submitted by employers and other third parties reporting income of taxpayers during the year. See Frantz v. Commissioner, T.C. Memo. 2020-64, at *6 n.5 (citing Oman v. Commissioner, T.C. Memo. 2010-276, 100 T.C.M. (CCH) 548, 551 (2010)).

[11]IRM pt. 2.3.73.2 (Apr. 27, 2018).

[12]IRM pt. 4.20.3.1.5(1) (Oct. 4, 2017).

[*7] • IMFOLT: provides a transcript of Form 1040, U.S. Individual Income Tax Return, for a particular tax period;[13]

• BMFOLI: provides a preview of a business taxpayer's compliance history for identifying any filed or unfiled returns;[14] and

• BMFOLT: provides a transcript of a Business Master File return such as a Form 5330, Return of Excise Taxes Related to Employee Benefit Plans, Form 990-T, Exempt Organization Business Income Tax Return, Form 1120, U.S. Corporation Income Tax Return, Form 1120-S, U.S. Income Tax Return for an S Corporation, or Form 1065, U.S. Return of Partnership Income, for a specific tax period.[15]

With respect to the remaining seven claims in the second set of WB claims, the classifier checked the boxes next to the command codes INOLES, IRPTRL, TRDBV, IMFOLI, and IMFOLT. The classifier did not check the boxes next to the BMFOLI or BMFOLT codes but did check the boxes next to the following codes:

---

[13]IRM pt. 4.71.2.3(1) (Nov. 9, 2017), 4.71.2.2.1(1)(c.) (Nov. 9, 2017) (IMFOLT is an acronym for Individual Master File On-Line).

[14]IRM pt. 4.20.3.1.5(1).

[15]IRM pt. 4.71.2.3(1), 4.71.2.2.1(1)(a.) (BMFOLT is an acronym for Business Master File On-Line).

[*8]

- AMDISA:  provides a listing of all taxable returns under examination;[16]

- IMFOLZ:  displays the audit history of an entity;[17] and

- RTVUE:  returns a summary selection screen that displays the returns, schedules, and forms submitted by a specific filer.[18]

The box marked "Internet" is not checked on any of the ARMs.

  2. Basis for the Recommendation

Underneath "Classification's Recommendation" is a section captioned, "Basis for the Recommendation".  In each Basis for the Recommendation section, the classifier wrote a bulleted review of the claim.  In each of the ARMs, the Basis for the Recommendation section is relatively similar.  In the following discussion we will, therefore, describe the Basis for the Recommendation section in three representative ARMs.

In the Basis for the Recommendation section prepared for claim No. 2018-007664--a claim in which petitioner alleged that the target taxpayer failed to report taxable income received from a settlement with the U.S. Government--the

---

[16]IRM pt. 4.71.2.3(1).

[17]IRM pt. 2.3.51.9(17) (Jan. 1, 2018).

[18]IRM pt. 2.3.52.1.1(2) (Jan. 1, 2012).

**[*9]** classifier wrote in the bulleted review that the taxpayer had "no open issues or balances due" and received Form 1099-MISC, from "US DOJ" in 2017.

In claim No. 2018-007671, petitioner alleged that the target taxpayer failed to report taxable income received as the result of litigation with a former employer. The classifier wrote in the bulleted review that the target taxpayer filed Form 1040, received Form W-2 for backpay from the company in question, and reported taxable interest.

For claim No. 2018-008507--another claim in which petitioner alleged that the target taxpayer failed to report taxable income after a trial and settlement with a former employer--the classifier wrote in the bulleted review that the target taxpayer's total reported income included all settlement payments and indicated that this information was retrieved using command code "RTVU[e]".

At the bottom of some of the bulleted reviews the classifier wrote that the claim, "fail[ed] to include specific and credible information to support a potential tax violation/allegation, as well as documentation to support the claim." At the bottom of others the classifier indicated that the claim was "speculative", "purely speculative", or both. None of the ARMs refer to the fact that petitioner's allegations were based on publicly available information.

**[*10]**     3.     Classification's Recommendation

Underneath Classification Research is a section captioned Classification's Recommendation. In each ARM the classifier wrote in this section, "Reject the claim: Allegations are not specific, credible, or are speculative".

B.     Summary

As illustrated by the foregoing, all 19 ARMs reflect that a classifier reviewed petitioner's allegations, compared them with relevant IRS records, and recommended rejection of petitioner's claims because "[a]llegations are not specific, credible, or are speculative".

III.     The WBO's Final Determination Letters

On May 17, 2018, the WBO issued petitioner six final determination letters for the first set of WB claims. Between June 12 and 13, 2018, the WBO issued petitioner thirteen final determination letters for the second set of WB claims.[19] Each final determination letter was captioned "FINAL DECISION UNDER SECTION 7623(a)" and informed petitioner that "[t]he Whistleblower Office has made a final decision to reject your claim for an award." Each letter explained: "The claim has been rejected because the information provided was speculative

---

[19]The WBO did not issue preliminary rejection letters to petitioner for any of the claims.

[*11] and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."[20]

While residing in New York, petitioner timely petitioned this Court to review the WBO's determinations on June 14 and July 2, 2018. On March 28, 2019, the parties submitted a joint motion to submit the cases without trial under Rule 122, which the Court granted. The parties stipulated the administrative record in each case.

Discussion

I. Whistleblower Awards

A. Awards Under Section 7623

An individual may be entitled to an award under section 7623(a) for providing the IRS with information leading to the detection of underpayments of tax or the detection and bringing to trial and punishment persons guilty of violating the internal revenue laws. Section 7623(b) makes whistleblower awards mandatory if certain requirements are met. See Van Bemmelen v. Commissioner,

---

[20]We note that each letter included the same "and/or" conjunction that led to a lack of clarity in Lacey v. Commissioner, 153 T.C. 146, 170 (2019). As discussed infra, there is no lack of clarity here. But we continue to be generally concerned that this form text may create confusion when we review a summary rejection of a whistleblower claim. See Alber v. Commissioner, T.C. Memo. 2020-20, at *8 n.5.

**[*12]** 155 T.C. 64, 71 (2020).  A whistleblower award under section 7623(b)(1) requires that the IRS initiate an administrative or judicial action and collect tax proceeds.  See Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd per curiam, 550 F. App'x 10 (D.C. Cir. 2014); Cooper v. Commissioner, 136 T.C. 597, 600 (2011).

B.      Tax Court Jurisdiction

We have jurisdiction over any determination made by the Secretary regarding an award under section 7623(b)(1), (2), or (3), including rejections and denials of claims for awards.  See sec. 7623(b)(4); Lacey v. Commissioner, 153 T.C. 146, 163-164, 169 (2019).  Although we have jurisdiction to review such determinations, we do not have authority to order the IRS to commence an administrative or judicial proceeding, or to review the IRS' determination of the alleged tax liability to which a whistleblower's claim pertains.  See Lacey v. Commissioner, 153 T.C. at 164; Cohen v. Commissioner, 139 T.C. at 302 (citing Cooper v. Commissioner, 136 T.C. at 600).

C.      Standard and Scope of Review

When we review the WBO's determination regarding whether a whistleblower is entitled to an award, we generally confine ourselves to the administrative record to decide whether there has been an abuse of discretion.

[*13] <u>Van Bemmelen v. Commissioner</u>, 155 T.C. at 78; <u>see also</u> <u>Kasper v.</u> <u>Commissioner</u>, 150 T.C. 8, 22 (2018). In such cases (and the instant cases are no exception), "we review final agency action under the Administrative Procedure Act, 5 U.S.C. secs. 551-559, 701-706 (2018), * * * deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." <u>Rogers v. Commissioner</u>, 157 T.C. __, __ (slip op. at 11) (Aug. 2, 2021) (citing <u>Van Bemmelen v. Commissioner</u>, 155 T.C. at 79).

D. <u>WBO Evaluation</u>

Pursuant to section 7623 and the regulations thereunder, the WBO performs an initial evaluation of a whistleblower's submission to determine whether the claim, on its face, meets minimum standards. <u>See</u> <u>Van Bemmelen v.</u> <u>Commissioner</u>, 155 T.C. at 81-83; <u>Lacey v. Commissioner</u>, 153 T.C. at 159-160; <u>Worthington v. Commissioner</u>, T.C. Memo. 2020-141; sec. 301.7623-1(c)(1), (4), Proced. & Admin. Regs.[21] As relevant here, a rejection occurs when the

---

[21]<u>See also</u> Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(B), 120 Stat. at 2960 (requiring the WBO to "analyze information received from any individual described in section 7623(b) of the Internal Revenue Code of 1986 and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office").

[*14] whistleblower's submission is insufficient on its face because it fails to meet certain threshold requirements. Sec. 301.7623-3(c)(7), Proced. & Admin. Regs.; see also Lacey v. Commissioner, 153 T.C. at 168-169.

The threshold criteria by which the WBO evaluates a claim's potential eligibility for an award include that the claim:

- "contain[s] specific * * * information";

- "contain[s] * * * credible information";

- provides "information that the whistleblower believes will lead to collected [tax] proceeds";

- reports "fail[ure] to comply with the internal revenue laws";

- "identif[ies] the person(s) believed to have failed to comply with the internal revenue laws";

- "provide[s] substantive information, including all available documentation"; and

- does not "provide speculative information".

Lacey v. Commissioner, 153 T.C. at 160 (quoting section 301.7623-1(c)(1) and (4), Proced. & Admin. Regs.). "It is the job of the WBO to initially evaluate a claim against those criteria. * * * If, in its initial evaluation, the WBO determines that a claim is deficient, then under the regulations it can 'reject' the claim outright". Lacey v. Commissioner, 153 T.C. at 161. Of particular relevance in these cases, "[s]ubmissions that provide speculative information or that do not

**[*15]** provide specific and credible information regarding tax underpayments or violations of internal revenue laws do not provide a basis for an award" and may be rejected by the WBO. Sec. 301.7623-1(c)(1), Proced. & Admin. Regs.

II. Analysis

The administrative record demonstrates a common pattern in the WBO's consideration of petitioner's 19 claims. The WBO received, initially evaluated, and completed an ARM for every claim. On each ARM the classifier completed the Classification Research and Basis for the Recommendation sections. In each Classification Research section, the classifier checked the boxes next to multiple command codes, indicating that the classifier retrieved information from IRS databases and systems. Each Basis for the Recommendation section included a bulleted review reflecting that the classifier compared petitioner's allegations with relevant information from the IRS' databases and systems, including information about the target taxpayers.

Finally, on each ARM, the classifier recommended rejection of the claim because, "[a]llegations are not specific, credible, or are speculative". See id. Consequently, rather than forwarding the claim to an IRS examiner for possible action, the WBO rejected the claim, and stated in each final decision letter that "[t]he claim has been rejected because the information provided was speculative

**[*16]** and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws." In reviewing the WBO's rejections of these claims, we do not substitute our judgment for the reasonable judgment of the WBO but instead review only for abuse of discretion. See, e.g., Lacey v. Commissioner, 153 T.C. at 164.

On the basis of the foregoing, we conclude that the WBO evaluated each claim and used reasonable judgment in determining that each one should be rejected because the information provided was speculative and/or because it did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws. We therefore rule that the WBO's rejections of petitioner's claims were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See Van Bemmelen v. Commissioner, 155 T.C. at 79.

III.   Petitioner's Arguments

Petitioner assigns at least three errors to the WBO; she believes that each constitutes an abuse of discretion. First, petitioner contends that her claims were summarily dismissed by the WBO because she used publicly available information. Second, petitioner argues that her claims should have been "denied", rather than "rejected", in accordance with the relevant regulatory provisions.

**[*17]** Finally, petitioner contends that the WBO committed a procedural foul. She believes that certain claims should have been treated as claims arising under section 7623(b) (section 7623(b) claims) but were improperly classified as claims arising under section 7623(a) (section 7623(a) claims). We review these arguments in turn.

### A. Publicly Available Information

On the basis of her reading of the administrative record, petitioner alleges that the WBO improperly concluded that her claims were speculative because they were supported by publicly available information. Petitioner assigns error by pointing to IRM provisions which:

- prohibit the WBO from rejecting a whistleblower claim solely because the whistleblower used publicly available information, see IRM pt. 25.2.1.3.3(3) (Jan. 11, 2018);

- direct that "[c]laims submitted with publicly available information must still be considered, regardless of the whistleblower's firsthand knowledge of the situation", id.; and

- highlight a provision of the IRM that provides if allegations are based on or supported by information, including public information, then the claim is not purely speculative in nature, IRM pt. 25.2.1.3.2(5).

[*18] With respect to petitioner's reliance on the IRM, we observe that the IRM's directives are instructive in understanding the procedures the IRS expects its employees to follow, but they do not carry the force and effect of law or confer rights on taxpayers. See Van Bemmelen v. Commissioner, 155 T.C. at 85 n.15; Eichler v. Commissioner, 143 T.C. 30, 39 (2014) (citing Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), aff'g T.C. Memo. 2004-13). Furthermore, compliance with IRM provisions is not mandatory.[22] Reynolds v. Commissioner, T.C. Memo. 2021-10, at *26 (citing Urban v. Commissioner, 964 F.2d 888, 890 (9th Cir. 1992), aff'g T.C. Memo. 1991-220, Ward v. Commissioner, 784 F.2d 1424, 1430-1431 (9th Cir. 1986), aff'g T.C. Memo. 1984-570, and Wadleigh v. Commissioner, 134 T.C. 280, 294 n.13 (2010)).

Though it is true that all the ARMs state in the Classification's Recommendation section that the claim is "speculative" and several repeat the same in the Basis for the Recommendation section, each ARM also includes the classifier's bulleted review of the claim which reflects that the classifier compared

---

[22]In the context of IRS collections, we have held that a settlement officer does not abuse his discretion if he follows the guidelines set forth in the IRM. See Orum v. Commissioner, 123 T.C. 1, 13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Margolis-Sellers v. Commissioner, T.C. Memo. 2019-165, at *40; Aldridge v. Commissioner, T.C. Memo. 2009-276, 2009 WL 4282048, at *5.

[*19] petitioner's allegations to IRS records, including records of target taxpayers. None of the ARMs include any reference to the fact that petitioner's claims were supported by publicly available information or connect that fact to the classifier's recommendation.

In sum, the record does not support the conclusion that the WBO's determinations were premised on the claims' reliance on publicly available information.[23]

B.      Classification of Whistleblower Claims

Petitioner argues that the WBO abused its discretion by "rejecting", rather than "denying", her claims.  The regulations establish a distinction between a "rejection" (a determination that relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower), sec. 301.7623-3(c)(7), Proced. & Admin. Regs., and a "denial" (a determination that relates to or implicates taxpayer information, including cases in which the IRS

---

[23]See McCrory v. Commissioner, T.C. Memo. 2018-12, at *9, which involved the same petitioner as in the instant case.  There too she submitted whistleblower claims based on publicly available information.  The Court granted the Commissioner's motion for summary judgment, holding that the whistleblower did not meet threshold requirements for an award and that remand was not appropriate.

**[*20]** does not proceed or collect proceeds on the basis of the whistleblower's information), id. subpara. (8).

We have similarly recognized this distinction between a "rejection" and a "denial". See Rogers v. Commissioner, 157 T.C. at __ (slip op. at 13-20); Lacey v. Commissioner, 153 T.C. at 161-163; Worthington v. Commissioner, at *21; Cline v. Commissioner, T.C. Memo. 2020-35, at *13-*14. If the WBO makes an ambiguous determination, the Court looks to the actions of the IRS as outlined in the administrative record to decide whether the determination was a rejection or a denial. See Rogers v. Commissioner, 157 T.C. at __ (slip op. at 28); Worthington v. Commissioner, at *24. In such a case, although the WBO must initially evaluate a claim for defects against the criteria outlined in section 301.7623-1(c)(1) and (4), Proced. & Admin. Regs., conducting research outside of IRS records tends toward characterizing the action as a denial.[24] See Worthington v. Commissioner, at *24. In the instant cases, however, there was no ambiguity as to the nature of the WBO's determinations: The WBO rejected petitioner's claims on the basis of the criteria outlined in section 301.7623-1(c)(1) and (4), Proced. & Admin. Regs. As

_____

[24]In Worthington v. Commissioner, T.C. Memo. 2020-141, at *22-*24, we considered that personnel in both the WBO and an operating division conducted research outside of IRS records.

**[*21]** we have described, we are satisfied that these determinations reflected reasonable judgment on the part of the WBO and were not an abuse of discretion.

Petitioner assigns error to the WBO's rejection of her claims because the administrative record shows that each classifier reviewed IRS records relating to the target taxpayers, apparently after inputting the command codes to retrieve relevant information from IRS databases or systems. Petitioner equates the classifier's activity to a determination that relates to or implicates taxpayer information. See sec. 301.7623-3(c)(8), Proced. & Admin. Regs. Consequently, she appears to question whether the WBO's subsequent action must be characterized as a denial. We do not think so.

The regulation petitioner cites says simply that a denial "relates to or implicates taxpayer information". See id. It does not define "taxpayer information" and, more importantly, it does not mandate that a denial must follow any time a classifier looks at taxpayer information. By contrast, the regulations specifically permit the WBO to reject a whistleblower's claim when it determines that the whistleblower's information is speculative, not credible, or fails to satisfy one of the other enumerated criteria. See sec. 301.7623-1(c)(4), Proced. & Admin. Regs. That is what the WBO did here, on the basis of each classifier's

[*22] recommendations. The fact that the classifier considered IRS records as part of the review process does not require a different result.[25]

Our conclusion in this regard is consistent with our prior caselaw. In Cline v. Commissioner, at *18-*19, we ruled that the WBO did not abuse its discretion in rejecting the whistleblower's claim after a review of the IRS' internal records to inquire whether the target taxpayer included all forms of income on its tax return for the year in question. In Kansky v. Commissioner, T.C. Memo. 2020-43, at *3, the classifier researched the taxpayer's allegations by retrieving and analyzing IRS account transcripts and tax returns filed by the target taxpayers. We identified no abuse of discretion in the WBO's rejection of the whistleblower's claims. Id. at *8. Conversely, in Worthington v. Commissioner, at *24, where the WBO's determination was ambiguous, we stated that research "outside the claim" conducted by both an IRS operating division and the WBO, "tends toward characterizing the subsequent action as a denial."

Unlike in Worthington, there is no ambiguity in these cases that the WBO rejected petitioner's claims. It may be that the record here could also have justified

---

[25]Indeed, IRS guidance directs classifiers to use all available resources, including IDRS and other databases, to evaluate every whistleblower claim. See IRM pt. 25.2.1.3.2(4) (Jan. 11, 2018).

[*23] a denial, but we are concerned with the determinations the WBO actually made, not with those it could have made. And, on the record before us, we are satisfied that the WBO's determinations were consistent with the regulations.

### C. Alleged Procedural Irregularities

Petitioner protests that the WBO classified certain claims as section 7623(a) claims rather than section 7623(b) claims.[26] Section 7623(b) makes whistleblower awards mandatory if certain requirements are met, one of which is that the amount of tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2 million. Sec. 7623(b)(5)(B). Because some of her claims alleged that the target taxpayer owed more than $2 million and the ARMs for those claims noted that the claims might meet the requirements for a section 7623(b) claim, petitioner assigns as error their ultimate classification as section 7623(a) claims.

---

[26]For a rejection of a claim arising under sec. 7623(b), the WBO must issue a preliminary rejection letter, notifying the whistleblower of the claim's defects and giving the whistleblower an opportunity to perfect it. See sec. 301.7623-3(c)(7), Proced. & Admin. Regs. Conversely, the regulations do not contain a similar mandate for a claim arising under sec. 7623(a). See sec. 301.7623-3(b)(3), Proced. & Admin. Regs. As petitioner's claims were rejected under sec. 7623(a), the WBO did not issue preliminary rejection letters to petitioner. See Lacey v. Commissioner, 153 T.C. at 161 n.15; Frantz v. Commissioner, at *14 n.12.; sec. 301.7623-1(c)(4), Proced. & Admin. Regs. (explaining that if the WBO rejects a claim, then the WBO will provide notice of the rejection to the whistleblower pursuant to the rules of sec. 301.7623-3(b)(3) or (c)(7), Proced. & Admin. Regs.).

[*24] Petitioner suggests that this purported inconsistency in the administrative record amounts to an abuse of discretion and asks us to "direct Respondent * * * [to] designate claims a[s] 7623(a) or 7623(b) matters as prescribed in the regulations."

We have recognized that for purposes of classifying a claim as a section 7623(a) claim or a section 7623(b) claim, the IRM provides that the whistleblower's description of the amount owed by the taxpayer is not determinative. Van Bemmelen v. Commissioner, 155 T.C. at 85. Even if the alleged amount exceeds $2 million, the claim is to be considered a section 7623(a) claim if "the claim does not identify a specific/credible tax issue or is purely speculative in nature." Id. (quoting IRM pt. 25.2.2.7.1(2) (Jan. 12, 2018)).

In Van Bemmelen v. Commissioner, 155 T.C. at 85, the whistleblower argued that the record reflected inconsistencies in the classification of his claim as a section 7623(a) claim and such inconsistencies amounted to an abuse of discretion. We concluded that the WBO did not act arbitrarily by classifying a claim under section 7623(a) after the classifier, acting in accordance with IRS directives, concluded that the claim was "purely speculative". See Van Bemmelen v. Commissioner, 155 T.C. at 85-86.

**[\*25]** With respect to claims in which petitioner alleged that the target taxpayers owed more than $2 million, the record establishes that the relevant classifier determined that such allegations were "not specific, credible, or * * * [were] speculative." The classifier acted in accordance with IRM directives by characterizing the claim as arising under section 7623(a). See IRM pt. 25.2.2.7.1(2). And, as in Van Bemmelen, any error in this regard was in any event harmless, because we have treated petitioner's claims as arising under section 7623(b) for purposes of our review. See Van Bemmelen v. Commissioner, 155 T.C. at 86. Accordingly, we conclude that the classifier's decisions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.[27]

IV.    Conclusion

While petitioner's concerns about the accuracy of third-party income reporting may be sincere, the administrative record establishes that the WBO did not abuse its discretion with respect to her whistleblower claims. As we do not perceive any abuse of discretion in the WBO's rejections of petitioner's claims, we

---

[27]As we conclude that the WBO did not abuse its discretion, we do not need to reach the issue of whether we have jurisdiction to grant petitioner the relief she seeks in this matter.

**[*26]** rule for respondent. We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered for</u>

<u>respondent</u>.